## HARRY C. MILLER v. EMIL RADKE.[1]

March 6, 1925.

No. 24,348.

**Assignments of error not sustained.**

1. There are 17 assignments of error in this case, each going directly to the rulings upon the reception or exclusion of evidence, each of which has been examined and considered, and we find no reversible error therein.

**Charge and verdict sustained.**

2. The charge, when read as a whole, fairly placed before the jury the issues in the case, and the verdict should stand.

*Headnote 1. See Appeal and Error, 4 C. J. p. 1130, § 3122.
Headnote 2. See Brokers, 9 C. J. p. 660, § 130.

Action in the district court for Faribault county to recover $700. The case was tried before Dean, J., and a jury which returned a verdict for $826. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Frundt & Morse*, for appellant.
*Putnam & Carlson*, for respondent.

QUINN, J.

Action to recover $700, alleged to be owing from defendant to plaintiff as a balance on a land commission contract. There was a verdict in favor of plaintiff for the amount claimed with interest. From an order denying his motion for a new trial, defendant appealed.

It is alleged in the complaint that, in June, 1920, plaintiff and defendant entered into an agreement by the terms of which plaintiff was to procure, for the defendant, a customer, ready, able and willing to exchange other lands for 281 acres which defendant then owned in Faribault county, Minnesota, on terms agreeable to the

[1]Reported in 202 N. W. 821.

defendant; that, for the procuring of such a customer, defendant would pay plaintiff the sum of $1,000; that, pursuant to such arrangement, plaintiff found and produced H. C. Schneider and G. A. Schneider as such customers, who were ready, able and willing to exchange certain lands which they owned in the state of Texas for the defendant's land, on terms agreeable to the defendant; that thereafter defendant made such exchange with the Schneiders and the deal was fully consummated, defendant paying plaintiff the sum of $300 on his commission.

In his answer, defendant admits the employment of plaintiff to procure for him such a customer and that, if he did so, defendant would pay him the sum of $1,000 therefor. He further alleges that plaintiff did find a customer, in the persons of the Schneiders, with whom he consummated an exchange of properties, but further alleges, and sets up as a defense, certain fraudulent representations, claimed to have been made by the plaintiff to the defendant as to the character and conditions of the Texas land, and that the payment of the commission was conditional upon the land being as represented, and further counterclaims for the fraud. It is further alleged in the answer that, prior to the consummation of the exchange of properties, defendant went to Texas and inspected the land.

The reply admits that defendant went to Texas, inspected the lands in question, and denies each and every allegation of new matter in the answer set forth. It is further alleged in the reply that, subsequent to his going to Texas and inspecting the land, he came back to Minnesota and, in the spring of 1922, consummated the exchange agreement with the Schneiders and delivered to them a deed to his Faribault county land.

In this appeal, appellant alleges 25 assignments of error, the first 17 of which relate to the rulings of the trial court upon the admissibility of evidence and offers of proof. The others relate to the instructions given to the jury.

During the trial, defendant offered to show that, in May, 1921, while in Texas, he endeavored to sell the Texas land for the amount of the mortgage thereon, namely $4,700, but was unable to find a

purchaser at that price. The offer was rejected as being too remote and immaterial; that the offer did not disclose to whom it was made or whether such party was willing or able to make such a purchase, and that, if such testimony was received, it would have any tendency to fix the reasonable value of the land. There was no error in rejecting the offer, nor do we discover any error in permitting the cross-examination of defendant, as covered by assignments number 12 and 13. They had a direct bearing upon the reasonableness of defendant's story as to whether he relied upon the statements of the plaintiff or of the Schneiders as to the character and condition of the Texas land at the time of entering into the contract and as to his own experience in transactions of this character.

The testimony of William Johnson was taken by deposition in January, 1923. Assignments 4 to 11, inclusive, have reference to the exclusion of portions of the deposition. The rejected testimony had reference to the character and value of the Texas land. It was rejected upon the ground that no proper foundation had been laid and that the witness was not qualified to testify. These were matters largely in the discretion of the trial court and we discover no abuse of such discretion.

Assignments 15 and 16 refer to questions put to H. C. Schneider upon cross-examination as to what the parties from whom Schneider purchased the land agreed to do with reference to clearing the brush therefrom and the fencing thereof. There was no error in the ruling upon this testimony as the answers could have had no bearing upon the issues involved.

Assignment 17 refers to the right of plaintiff to inquire of Schneider when the deed to the Faribault county land was delivered to him. Defendant went to Texas and inspected the land in the spring of 1921. The deed had been placed in escrow with defendant's attorneys at Blue Earth and was not delivered to Schneider until long after defendant had inspected the Texas land. The testimony solicited from the witness was proper.

At the request of the defendant, the court instructed the jury as follows:

"You are instructed that it is the duty of the real estate agent to disclose to his principal all facts within his knowledge which may be material or which might influence his principal, and that when he conceals from his principal material facts known to himself, or makes fraudulent representations, to the detriment of his principal, he is not entitled to compensation, and if you find that the plaintiff misrepresented said Texas land, or concealed from defendant any facts detrimental to same he is not entitled to compensation."

The court also, at the request of the defendant, instructed the jury as follows:

"It is one of the claims and contentions of the defendant, Radke, that under the terms of the agreement between himself and the plaintiff, Miller, he paid Miller $200.00 for his compensation immediately after the making of the contract, Exhibit A, and that he was not to pay the balance of $800.00 until after he had inspected the Texas land and found the same to be as represented to him by Miller. If you find that that was the agreement between the parties, and if you further find that the Texas land was not as represented by Miller, then Miller is not entitled to any further compensation from defendant Radke, and your verdict will be accordingly."

The court further instructed the jury:

"Whether or not any fraudulent representations were made by Miller to the defendant in reference to the condition and quality of this land in Texas, and if so, what would that land be worth if it had been as represented by Miller, whether or not it would increase the value from what it actually was as found by Radke himself. Those matters are to be considered. If you find from the testimony in this case that Miller made no false representations that affected the value of this land or its condition then it would be your duty to return a verdict for whatever balance was due on the contract made between them, and it is claimed it was $700.00. On the question of counterclaim, in which the defendant has the burden of proof that false representations were made to his damage, if that is true, then of course, the defendant would be entitled to an affirmative judgment for the amount of damages that the defendant actually sus-

tained on account of any false and fraudulent representations made to him by Miller; not by anybody else, but by Miller, which induced Radke to enter into the contract and without which he would not have entered into it."

We find nothing in the charge, reading it as a whole, which destroys or interferes with the instructions above set forth. The charge, as given, when read as a whole, fairly and fully submitted the issues, as framed by the pleadings, to the jury, and its verdict should stand.

Affirmed.